# Exhibit A

 

**Your Missouri Courts**

Search for Cases by: Select Search Method...

| Judicial Links | eFiling | Help | Contact Us | Print | GrantedPublicAccess | Logoff MEGHANBALL |

## 2011-CC01194 - JANE HOGAN V WAL-MART STORES EAST LP (E-CASE)

| Case Header | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/ Execution |

FV Judge Views

**Click here to eFile on Case**
Click here to Respond to Selected Documents

Sort Date Entries: ● Descending ○ Ascending

Display Options: All Entries ▾

---

**12/31/2020** ☐ **Judge Assigned**

JUDGE REBECA NAVARRO-MCKELVEY IS ASSIGNED TO THIS CASE AS THE DIVISION ONE JUDGE PER THE ORDER OF JUDGE ASSIGNMENTS AND INDIVIDUALIZED DOCKET PLAN

---

**12/28/2020** ☐ **Retn Serv-Reg/Cert Mail Succs**

Document ID - 20-SMCC-2294; Served To - WAL-MART STORES EAST, LP D/B/A WALMART; Server - ; Served Date - 22-DEC-20; Served Time - 00:00:00; Service Type - Certified Mail; Reason Description - Served

☐ **Notice of Service**

Summons Returned Served by Certified Mail for Wal-Mart Stores East LP; Ex A - Return Receipt Rule 5416.

   **Filed By:** CYRUS C DASHTAKI
   **On Behalf Of:** JANE HOGAN

---

**12/18/2020** ☐ **Summons Issued-Circuit**

Document ID: 20-SMCC-2294, for WAL-MART STORES EAST, LP D/B/A WALMART. SUMMONS SAVED AND ATTACHED IN PDF FORM FOR ATTORNEY TO RETRIEVE FROM SECURE CASE.NET. PCW

☐ **Filing Info Sheet eFiling**
   **Filed By:** CYRUS C DASHTAKI

☐ **Summons Req-Serv by Mail**

Request for Summons Pursuant to Rule 5416 Service by Mail.
   **Filed By:** CYRUS C DASHTAKI
   **On Behalf Of:** JANE HOGAN

☐ **Pet Filed in Circuit Ct**

Petition for Employment Discrimination; Ex A - COD; Ex B - RTSL.

☐ **Judge Assigned**

---

| Case.net Version 5.14.12 | Return to Top of Page | Released 11/10/2020 |

**2011-CC01194**

Electronically Filed - St Charles Circuit Div - December 18, 2020 - 12:55 PM

IN THE CIRCUIT COURT OF ST. CHARLES COUNTY
STATE OF MISSOURI

JANE HOGAN,                          )
                                     )
    Plaintiff,                       )
                                     )
    v.                               )          Case No.
                                     )
WAL-MART STORES EAST, LP,            )
d/b/a WALMART,                       )
                                     )
    Serve:  Registered Agent         )
            120 South Central Avenue,    )
            Clayton, Missouri, 63105,    )
                                     )
    Defendant.                       )

## PETITION FOR DAMAGES

COMES NOW Plaintiff Jane Hogan ("Hogan" or "Plaintiff"), by and through her undersigned counsel, and for her Petition for violations of the Americans with Disabilities Act ("Petition") against Defendant Wal-Mart Stores East, LP d/b/a Walmart ("Defendant"), states:

### INTRODUCTION

1.      Plaintiff brings this lawsuit to remedy unlawful disability discrimination in the terms, conditions, and privileges of employment, failure to accommodate disability, and retaliation in violation of Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §12101 *et seq.* and the ADA Amendments Act of 2008 ("ADAAA").

2.      Plaintiff seeks injunctive relief, equitable relief, punitive damages, and monetary relief as compensation for Defendant's violations of her rights under the ADA, pursuant to 42 U.S.C. § 12117; and attorney's fees and costs, pursuant to 42 U.S.C. § 12205.

### PARTIES

3.      Defendant is a foreign corporation registered with the Missouri Secretary of State

1

Electronically Filed - St Charles Circuit Div - December 18, 2020 - 12:55 PM

that is duly organized, established, and existing under and by virtue of the laws of the State of Delaware, with its principal place of business located at 702 Southwest Eighth Street, Bentonville, Arkansas, 72716, United States.

4.      Defendant is a corporation that employs more than fifteen (15) employees.

5.      Hogan is an individual residing in St. Charles County, Missouri, and at all times relevant to the allegations in this Complaint worked for Walmart at its retail store #5313, located at 6100 Ronald Reagan Drive, Lake St. Louis, MO 63367.

6.      Hogan has multiple sclerosis ("MS"), a disease of the central nervous system that causes nerve damage and deterioration. Her medical condition substantially limits various major life activities, including but not limited to standing, lifting, bending, and twisting.

## JURISDICTION AND VENUE

7.      On or about October 29, 2019, Hogan filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the action complained of. A true and correct copy of Hogan's Charge of Discrimination is attached and incorporated by reference as *Exhibit A*.

8.      On or about September 28, 2020, the EEOC issued Hogan a Notice of Right to Sue. Accordingly, Hogan has fully complied with all jurisdictional prerequisites to bring this action. A true and correct copy of Hogan's Notice of Right to Sue is attached and incorporated by reference as *Exhibit B*.

9.      Hogan has satisfied all administrative prerequisites, and now seeks relief in court.

10.     Defendant's unlawful employment practices complained of herein occurred in St. Charles County, Missouri; therefore, jurisdiction and venue are proper in this Court.

Electronically Filed - St Charles Circuit Div - December 18, 2020 - 12:55 PM

## FACTS COMMON TO ALL COUNTS

11.     Defendant is an American multinational corporation that operates a chain of superstores, discount department stores, and grocery stores.

12.     Hogan began working for Defendant in 2004 as a People Greeter in Defendant's St. Peters, Missouri location.

13.     In 2009, Hogan transferred to Defendant's Lake St. Louis, Missouri location, and maintained her position as a People Greeter.

14.     As a result of her MS, she is unable to ambulate without the use of her motorized wheelchair.

15.     Her wheelchair is able to raise her body so that she is at the eye-level of a standing person.

16.     For the duration of her employment, she performed the essential functions of the People Greeter position, and was known to be a good, diligent employee.

17.     In March 2019, store manager Dennis O'Malley ("O'Malley") informed Hogan that Defendant would eliminate the People Greeter position on April 25, 2019.

18.     After that time, the People Greeter position would be replaced with a new position titled "Customer Host."

19.     The job descriptions and requirements for the old People Greeter position and the new Customer Host position are very similar; both positions require interacting with customers and preventing theft, however, the Customer Host position lists "standing for long periods of time" as a physical activity that is necessary to perform an essential function of the position.

20.     Standing is not an essential function of the Customer Host position.

3

Electronically Filed - St Charles Circuit Div - December 18, 2020 - 12:55 PM

21.     It is not necessary to stand for long periods of time to perform any of the essential functions of the Customer Host position.

22.     Hogan is able to perform the essential functions of the Customer Host position with or without reasonable accommodation.

23.     In anticipation of the People Greeter position being eliminated, Hogan applied for the Customer Host position on or about March 29, 2019.

24.     At the time of her application, she also requested that she be permitted to use her wheelchair as a reasonable accommodation to the physical activity of standing.

25.     On or about April 5, 2019, the District Human Resource Manager, Greg Kerner ("Kerner") advised her that she was not likely to receive the requested accommodation.

26.     On or about April 12, 2019, Defendant offered Hogan a Customer Host position, provided her with employment onboarding documents, and sent her for a drug screening.

27.     Defendant uses an outside corporation, Sedgwick, to manage human resource issues.

28.     On or about April 15, 2019, a Sedgwick representative informed Hogan that her accommodation request was denied because Defendant's corporate policy requires Customer Hosts to be able to independently stand on their feet for long periods of time.

29.     The Sedgwick representative further informed Hogan that Defendant rescinded their job offer.

30.     Consequently, Defendant's qualification standard of "standing for long periods of time" is the reason Defendant rescinded their job offer to Hogan.

31.     On or about April 16, 2019 Hogan met with O'Malley and Kerner and was offered a position monitoring the automated self-service checkout machines.

4

Electronically Filed - St Charles Circuit Div - December 18, 2020 - 12:55 PM

32.    Self-Checkout Hosts are stationed in a tightly packed corral of automated checkout machines, which is often packed with customers and their carts. Due to the small physical environment, Hogan would not be able to navigate her wheelchair throughout the area to assist shoppers with the self-checkout machines.

33.    O'Malley and Kerner told Hogan that she would not be required to enter the checkout corral, and instead could station herself at the entrance and direct shoppers to open machines. However, when Hogan asked to receive this accommodation offer in writing, O'Malley and Kerner refused.

34.    The Self-Checkout Host is also required to replace register receipt tape in the automated machines. This task would require Hogan to simultaneously lift the face of the machine while maneuvering her wheelchair backwards, a function she cannot perform due to a dexterity limitation in her hands. Although O'Malley and Kerner maintained that Self-Checkout Hosts are not responsible for this task, Hogan knew that to be untrue.

35.    Because Hogan knew she could not perform the essential functions of the Self-Checkout Host without accommodation, she had to decline the offer because O'Malley and Kerner would not guarantee the accommodation offer in writing.

36.    After reluctantly declining the Self-Checkout Host job offer, Hogan instead inquired about working as a Sales Associate, because she had previously worked shifts completing Sales Associate tasks, such as returning stock to the shelves. O'Malley informed Hogan this was not an option available to her.

37.    Defendant refused to participate in any interactive dialogue with Hogan as to potential accommodations that could be made. Defendant simply denied her accommodation request, and rescinded her job offer.

Electronically Filed - St Charles Circuit Div - December 18, 2020 - 12:55 PM

38.     As a result of Defendant's refusal to provide a reasonable accommodation, or to engage in an interactive process, Hogan was constructively discharged, and her employment was terminated on April 26, 2019.

39.     Defendant discriminated against Hogan on the basis of her disability.

40.     Defendant engaged in illegal discriminatory and retaliatory practices described herein with malice, deliberate, and/or reckless indifference to Hogan's rights.

## COUNT I—DISCRIMINATION IN HIRING

41.     Hogan incorporates by reference all preceding paragraphs as if fully stated herein.

42.     The ADA makes it unlawful for an employer, with respect to hiring, to discriminate against a qualified individual with a disability because of the disability of such individual. § 12112(a).

43.     Section 12112(b) defines "discriminate" to include utilizing standards, criteria, or methods of administration that have the effect of discrimination on the basis of disability and using qualification standards, employment tests, or other selection criteria that screen out or tend to screen out an individual with a disability.

44.     Defendant discriminated against Hogan when it characterized "standing for long periods of time" as an essential function of the Customer Host position, and then determined that no reasonable accommodation would allow her to perform that function.

45.     The job description for the Customer Host position includes nine (9) essential functions. Each essential function is set out in a paragraph, followed by the methods by which an individual is expected to carry out the essential function.

Electronically Filed - St Charles Circuit Div - December 18, 2020 - 12:55 PM

46.     The Customer Host job description lists "physical activities" that "are necessary to perform one or more essential functions" of the Customer Host Position. Each physical activity is set out in a paragraph.

47.     "Stands for long periods of time" is listed as a physical activity.

48.     The "Essential Functions" category of the job description specifies that it is an essential function that a Customer Host "[s]erves as a potential deterrent to criminal activity."  The methods by which this essential function is to be carried out are:

   a.   maintaining a highly visible presence at entrance;

   b.   observing customer and associate behavior;

   c.   deactivating security tags;

   d.   checking receipts on large un-bagged high value items;

   e.   resolving alarm activations; and

   f.   thanking customers as they exit the facility.

49.     It is not necessary to "stand for long periods of time" to perform the essential function of deterring potential criminal activity, or any of the listed methods by which the essential function is to be carried out.

50.     The "Essential Functions" category of the job description specifies that it is an essential function that a Customer Host "[m]aintains area of responsibility in accordance with Company policies and procedures." The methods by which this essential function is to be carried out are:

   a.   properly handling claims and returns;

   b.   arranging and organizing merchandise/supplies;

   c.   identifying shrink and damages; and

Electronically Filed - St Charles Circuit Div - December 18, 2020 - 12:55 PM

    d.  ensuring a safe work environment.

51.    It is not necessary to "stand for long periods of time" to perform the essential function of maintaining the area of responsibility, or any of the listed methods by which the essential function is to be carried out.

52.    The "Essential Functions" category of the job description specifies that it is an essential function that a Customer Host "[m]onitors activities and store standards within the store that relate to safety, and basic customer traffic flow." The methods by which this essential function is to be carried out are:

    a.  maintaining safety standards to ensure a safe and clean environment; and

    b.  responding to assistance requests from customers and associates.

53.    It is not necessary to "stand for long periods of time" to perform the essential function of monitoring safety and basic customer traffic flow, or any of the listed methods by which the essential function is to be carried out.

54.    The "Essential Functions" category of the job description specifies that it is an essential function that a Customer Host "[a]ssists with securing and safeguarding the assets of the Facility and property." The methods by which this essential function is to be carried out are:

    a.  observing and communicating suspicious activity;

    b.  assisting with investigations;

    c.  maintaining paperwork, logs, and other required documentation;

    d.  appropriately executing emergency response procedures; and

    e.  and ensuring security and safety practices are in place and adhered to.

Electronically Filed - St Charles Circuit Div - December 18, 2020 - 12:55 PM

55.     It is not necessary to "stand for long periods of time" to perform the essential function of assisting with securing or safeguarding the assets of the facility, or any of the listed methods by which the essential function is to be carried out.

56.     The "Essential Functions" category of the job description specifies that it is an essential function that a Customer Host "[p]rovides customer service at facility exits." The methods by which this essential function is to be carried out are:

      a.   maintaining the overall appearance of the exit area;

      b.   straightening merchandise in the area;

      c.   placing carts in storage area;

      d.   distributing approved marketing or promotional materials; and

      e.   staying up-to-date on appropriate responses to emergency codes.

57.     It is not necessary to "stand for long periods of time" to perform the essential function of providing customer service, or any of the listed methods by which the essential function is to be carried out.

58.     The "Essential Functions" category of the job description specifies that it is an essential function that a Customer Host "[i]dentifies possible shrink activities and associated risks." The methods by which this essential function is to be carried out are:

      a.   proactively monitoring the front-end store area; and

      b.   using personal judgment to make informed and effective decisions regarding the appropriate course of action to take when encountering situations where illegal activity or behavior may be present.

9

Electronically Filed - St Charles Circuit Div - December 18, 2020 - 12:55 PM

59.     It is not necessary to "stand for long periods of time" to perform the essential function of identifying possible shrink activities and associated risks, or any of the listed methods by which the essential function is to be carried out.

60.     The "Essential Functions" category of the job description specifies that it is an essential function that a Customer Host "[i]nfluences the behavior of others." The methods by which this essential function is to be carried out are:

        a.   using respectful communication and resolving conflict in an assertive yet tactful manner; and

        b.   using personal persuasion to effectively handle tense situations or interactions with others.

61.     It is not necessary to "stand for long periods of time" to perform the essential function of influencing the behavior of others, or any of the listed methods by which the essential function is to be carried out.

62.     The "Essential Functions" category of the job description specifies that it is an essential function that a Customer Host "[c]omplies with company policies, procedures, and standard of ethics and integrity." The methods by which this essential function is to be carried out are:

        a.   implementing related action plans;

        b.   using the Open Door Policy; and

        c.   applying these in executing business processes and practices.

63.     It is not necessary to "stand for long periods of time" to perform the essential function of complying with company policies, or any of the listed methods by which the essential function is to be carried out.

10

Electronically Filed - St Charles Circuit Div - December 18, 2020 - 12:55 PM

64.     The "Essential Functions" category of the job description specifies that it is an essential function that a Customer Host "[c]ompletes work assignments and priorities." The methods by which this essential function is to be carried out are:

   a.   using policies, data, and resources;

   b.   collaborating with managers, co-workers, customers, and other business partners;

   c.   identifying priorities, deadlines, and expectations;

   d.   carrying out tasks;

   e.   communicating progress and information;

   f.   determining and recommending ways to address improvement opportunities; and

   g.   adapting to and learning from change, difficulties, and feedback.

65.     It is not necessary to "stand for long periods of time" to perform the essential function of completing work assignments and priorities, or any of the listed methods by which the essential function is to be carried out.

66.     "Standing for long periods of time" is **not identified** as an essential function of the Customer Host position.

67.     None of the methods by which an essential function is to be carried out requires an individual to "stand for long periods of time."

68.     None of the other listed physical activities require an individual to "stand for long periods of time."

69.     The qualification standard of "standing for a long period of time," as used by Defendant, is not job-related, because standing for a long period of time is not an essential function

11

Electronically Filed - St Charles Circuit Div - December 18, 2020 - 12:55 PM

of a Customer Host, nor a physical activity that is actually necessary to perform any essential function.

70.     Consequently, for the Customer Host position, Defendant utilizes unreasonable qualification standards that tend to disqualify people with disabilities.

71.     The qualification standard used by Defendant has the effect of discrimination on the basis of disability. 42 U.S.C. § 12112(b).

72.     In characterizing "standing for long periods of time" as an essential function, Defendant seeks to avoid its duty to engage in an interactive process with an otherwise qualified individual with a disability who is an applicant or employee.

73.     In characterizing "standing for long periods of time" as an essential function, Defendant seeks to avoid its duty to make reasonable accommodations to the known physical or limitations of an otherwise qualified individual with a disability who is an applicant or employee.

WHEREFORE, Plaintiff Jane Hogan respectfully requests that this Court will, after trial by jury, enter judgment against Defendant and in favor of Plaintiff on Count I of her Petition for Damages, and award Hogan damages in such amounts to be determined at trial as is deemed fair and reasonable, including actual damages, past and future lost income, compensatory damages, punitive damages; prejudgment interest, as allowed by law; for reasonable attorneys' fees and costs of suit; for injunctive relief or other appropriate equitable relief; and for such other relief as this Court deems just, proper and as justice requires.

## COUNT II—DISCRIMINATION

74.     Hogan restates and incorporates by reference all prior allegation of this Petition as if fully set forth herein.

Electronically Filed - St Charles Circuit Div - December 18, 2020 - 12:55 PM

75.     Defendant rescinded its Customer Host job offer purporting that "standing for long periods of time" is an essential function of the job.

76.     Defendant rescinded its job offer purporting that there were no reasonable accommodations that would allow Plaintiff to perform the essential functions of the job.

77.     "Standing for long periods of time" is not an essential function of a Customer Host.

78.     Plaintiff is qualified to carry out all the essential functions of the Customer Host position using the methods specified in the job description, with or without reasonable accommodation.

79.     In fact, Plaintiff is uniquely qualified to carry out the essential functions related to deterring criminal activity, maintaining safety, observing and communicating suspicious activity, assisting in investigations, using personal judgement in response to illegal activity, resolving conflict, and ensuring security practices are in place, because Plaintiff worked as a police officer for eight (8) years before her employment with Defendant.

80.     Moreover, Defendant's Asset Protection Manager, Kyle Shanks ("Shanks"), was the person to interview Plaintiff and offer her the Customer Host position.

81.     Defendant discriminated against Plaintiff by reason of her disability when it refused to engage in an interactive process with Plaintiff after she requested reasonable accommodation.

82.     Defendant discriminated against Plaintiff by reason of her disability when it unreasonably denied her request for reasonable accommodations.

83.     Defendant discriminated against Plaintiff by reason of her disability when it rescinded its Customer Host job offer.

84.     Defendant discriminated against Plaintiff by reason of her disability when it terminated her employment.

13

Electronically Filed - St Charles Circuit Div - December 18, 2020 - 12:55 PM

85.     The agents, servants, and employees of Defendant identified above knew or should have known of prohibitions against discrimination based on disability, and they did nothing to address the discrimination directed towards Plaintiff and failed to implement effective and appropriate procedures to stop the inequitable treatment of Plaintiff based on her disability, and were at all times acting within the scope and course of their agency and employment; and/or their actions were expressly authorized by Defendant; and/or their actions were ratified by Defendant, thus making Defendant liable.

86.     As a direct result of Defendants' discriminatory practices, actions, omissions, and failures to act as described herein, Hogan has sustained and continues to sustain damages, including but not limited to economic loss in the form of lost wages and benefits of employment, future lost wages and earnings, emotional pain, suffering, humiliation, fear, anxiety, dread, inconvenience, mental anguish, embarrassment, and deprivation of her civil rights. In addition, Hogan has incurred and will continue to incur attorneys' fees, costs and expenses of suit.

87.     Defendant's conduct was outrageous because of its evil motive or reckless indifference to Plaintiff's civil rights, thereby entitling her to an award of punitive damages in an amount that will punish Defendant and deter Defendant and others from like conduct.

WHEREFORE, Plaintiff Jane Hogan respectfully requests that this Court will, after trial by jury, enter judgment against Defendant and in favor of Plaintiff on Count II of her Petition for Damages, and award Hogan damages in such amounts to be determined at trial as is deemed fair and reasonable, including actual damages, past and future lost income, compensatory damages, punitive damages; prejudgment interest, as allowed by law; for reasonable attorneys' fees and costs of suit; for injunctive relief or other appropriate equitable relief; and for such other relief as this Court deems just, proper and as justice requires.

Electronically Filed - St Charles Circuit Div - December 18, 2020 - 12:55 PM

## COUNT III—FAILURE TO ACCOMMODATE

88.     Hogan restates and incorporates by reference, as if fully set forth herein, all prior allegations of this Petition.

89.     After Defendant unlawfully disqualified Plaintiff from the Customer Host position and rescinded her job offer, it purported to offer her a "reasonable accommodation" in the form of a job reassignment.

90.     The proposed reassignment was as a Self-Checkout Host.

91.     The Self-Checkout Host is required to replace register receipt tape in the automated machines. This task would require Hogan to simultaneously lift the face of the machine while maneuvering her wheelchair backwards, a function she cannot perform due to a dexterity limitation in her hands. Although O'Malley and Kerner maintained that Self-Checkout Hosts are not responsible for this task, Hogan knew that to be untrue.

92.     When Hogan asked to receive this accommodation in writing, O'Malley and Kerner refused.

93.     Because O'Malley and Kerner refused to provide Hogan with the accommodation in writing and Hogan knew she could not perform the essential functions of the Self-Checkout Host without accommodation, she declined the job offer, and instead inquired about working as a Sales Associate.

94.     Hogan had previously been able to perform work similar to that of a Sales Associate. Due in part to the elevating and maneuvering capability of her power wheelchair, she is able to handle, restock, and backstock merchandise, including high shelves. However, O'Malley and Kerner refused to entertain her request.

Electronically Filed - St Charles Circuit Div - December 18, 2020 - 12:55 PM

95.     Defendant did not effectively offer an accommodation to Plaintiff when it suggested job reassignment to a position that Defendant knew Plaintiff could not perform without accommodation, and then refused to guarantee that an accommodation would be granted.

96.     Defendant's job reassignment "accommodation" is merely pretext.

97.     Defendant did not participate in an interactive process when it refused to put a verbal offer of accommodation in writing.

98.     Defendant did not in good faith participate in an interactive process when it misrepresented the responsibilities of a Self-Checkout Host.

99.     Defendant did not participate in an interactive process when it refused to entertain Plaintiff's request for an alternate job position she was capable of performing with or without accommodation.

100.    Consequently, Defendant has discriminated against Plaintiff.

101.    The agents, servants, and employees of Defendant identified above knew or should have known of prohibitions against discrimination based on disability, and they did nothing to address the discrimination directed towards Plaintiff and failed to implement effective and appropriate procedures to stop the inequitable treatment of Plaintiff based on her disability, and were at all such times acting within the scope and course of their agency and employment; and/or their actions were expressly authorized by Defendant; and/or their actions were ratified by Defendant, thus making Defendant liable.

102.    As a direct result of Defendant's discriminatory and retaliatory practices, actions, omissions, and failures to act as described herein, Hogan has sustained and continues to sustain damages, including but not limited to economic loss in the form of lost wages and benefits of employment, future lost wages and earnings, emotional pain, suffering, humiliation, fear, anxiety,

Electronically Filed - St Charles Circuit Div - December 18, 2020 - 12:55 PM

dread, inconvenience, mental anguish, embarrassment, and deprivation of her civil rights. In addition, Hogan has incurred and will continue to incur attorneys' fees, costs and expenses of suit.

103.    Defendant's conduct was outrageous because of its evil motive or reckless indifference to Hogan's civil rights, thereby entitling her to an award of punitive damages in an amount that will punish Defendant and deter Defendant and others from like conduct.

WHEREFORE, Plaintiff Jane Hogan, respectfully requests that this Court will, after trial by jury, enter judgment against Defendant and in favor of Plaintiff on Count III of her Petition for Damages; and award Hogan actual, compensatory, and/or punitive damages in such amounts to be determined at trial as is deemed fair and reasonable; prejudgment interest, as allowed by law; for reasonable attorneys' fees and costs of suit; for injunctive relief or other appropriate equitable relief; and for such other relief as this Court deems just, proper and as justice requires.

## COUNT IV—RETALIATION

104.    Plaintiff engaged in protected activities, including but not limited to requesting workplace accommodations.

105.    Defendant has engaged in unlawful retaliatory acts that are prohibited under the ADA.

106.    Soon after Plaintiff requested workplace accommodations, Defendant took adverse actions against Plaintiff, including but not limited to:

   a.   denying Plaintiff's requests for accommodations;

   b.   rescinding her Customer Host job offer;

   c.   denying her a timely, good faith interactive process; and

   d.   terminating her employment.

17

Electronically Filed - St Charles Circuit Div - December 18, 2020 - 12:55 PM

107.    The agents, servants, and employees of Defendant identified above knew or should have known of prohibitions against discrimination based on disability, and they did nothing to address the discrimination directed towards Plaintiff and failed to implement effective and appropriate procedures to stop the inequitable treatment of Plaintiff based on her disability, and were at all such times acting within the scope and course of their agency and employment; and/or their actions were expressly authorized by Defendant; and/or their actions were ratified by Defendant, thus making Defendant liable.

108.    Defendant's actions and/or omissions, as aforesaid, in effect, condoned, ratified, and/or authorized the discrimination and mistreatment of Plaintiff, and constitute unlawful retaliation.

109.    As a direct result of Defendant's discriminatory and retaliatory practices, actions, omissions, and failures to act as described herein, Hogan has sustained and continues to sustain damages, including but not limited to economic loss in the form of lost wages and benefits of employment, future lost wages and earnings, emotional pain, suffering, humiliation, fear, anxiety, dread, inconvenience, mental anguish, embarrassment, and deprivation of her civil rights. In addition, Hogan has incurred and will continue to incur attorneys' fees, costs and expenses of suit.

110.    Defendant's conduct was outrageous because of its evil motive or reckless indifference to Hogan's civil rights, thereby entitling her to an award of punitive damages in an amount that will punish Defendant and deter Defendant and others from like conduct.

WHEREFORE, Plaintiff Jane Hogan, respectfully requests that this Court will, after trial by jury, enter judgment against Defendant and in favor of Plaintiff on Count IV of her Petition for Damages; and award Hogan actual, compensatory, and/or punitive damages in such amounts to be determined at trial as is deemed fair and reasonable; prejudgment interest, as allowed by law; for

18

Electronically Filed - St Charles Circuit Div - December 18, 2020 - 12:55 PM

reasonable attorneys' fees and costs of suit; for injunctive relief or other appropriate equitable

relief; and for such other relief as this Court deems just, proper and as justice requires.

## DEMAND FOR JURY TRIAL

Plaintiff requests a trial by jury on all issues in this case which are so triable.

Respectfully Submitted,

/s/ Cyrus Dashtaki
Cyrus Dashtaki, #57606
Dashtaki Law Firm, LLC
5205 Hampton Avenue
St. Louis, MO 63109
Telephone:    (314) 932-7671
Facsimile:    (314) 932-7672
Email:        cyrus@dashtaki.com

*Attorney for Plaintiff Jane Hogan*

2011-CC01194

Electronically Filed - St Charles Circuit Div - December 18, 2020 - 12:55 PM

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 560-2019-02314 |

2019 OCT 28 AM 11: 11

Missouri Commission On Human Rights — and EEOC

*State or local Agency, if any*

| Name *(Indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Ms. Jane Hogan** | **636-887-2009** | **01/24/1951** |

| Street Address | City, State and ZIP Code |
|---|---|
| **119 Miranda Court, Wentzville, MO 63385** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **Walmart Supercenter** | **20 or more** | **636-625-2101** |

| Street Address | City, State and ZIP Code |
|---|---|
| **6100 Ronald Regan Drive, Lake St. Louis, MO 63367** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☐ RETALIATION   ☐ AGE   ☒ DISABILITY   ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| **03/29/19** | **04/26/19** |

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

1) I am a person with a disability as defined by the Americans with Disabilities Amendments Act (ADAA) and the Missouri Human Rights Act (MRHA), in that I have a physical impairment that substantially limits one or more of my major life activities. I have multiple sclerosis (MS).
2) As a result of my MS, I am unable to independently ambulate and require the use of a motorized wheelchair.
3) My wheelchair allows me not only to ambulate, but also to raise myself to the eyelevel of a non-disabled person.
4) In 2004, I was hired as a by the Walmart in St. Peters, MO, as a Greeter.
5) In 2009, I transferred to the Walmart in Lake St. Louis, MO, and maintained my positon as a "greeter".
6) For the last fifteen (15) years, with the use of my wheelchair, I have performed the essential functions of the greeter position. I am known to be a good, hard-working employee.
7) In March 2019, I was informed by the store manager, Dennis O'Malley, and co-manager, Megan (last name unknown) that Walmart would be eliminating the greeter position on 04/25/19.
8) The greeter position would be replaced with the "customer host" position.
9) The job descriptions and requirements for the greeter and customer host are substantially similar in

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 10/11/2019     *Date*          *Charging Party Signature* | SUBSCRIBED AND SWORN TO BE... *(month, day, year)* |

PLAINTIFF'S EXHIBIT
A

Electronically Filed - St Charles Circuit Div - December 18, 2020 - 12:55 PM

Electronically Filed - St Charles Circuit Div - December 18, 2020 - 12:55 PM

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC  560-2019-02314 | |

**Missouri Commission On Human Rights** and EEOC

*State or local Agency, if any*

that both positions require interacting with customers and preventing theft, however, customer hosts are required to have the ability to stand.

10) On March 29, 2019, in anticipation of the elimination of the greeter position, I applied for the customer host position.

11) At the same time that I applied, I requested that I be permitted to use my wheelchair as a reasonable accommodation to the standing requirement.

12) On April 5, 2019, the District Human Resource Manager, Greg (last name unknown), advised me that it was unlikely that I would receive my requested accommodation.

13) On April 12, 2019, Walmart offered me a customer host position; I was provided with employment documents and submitted to drug screening.

14) On April 15, 2019, I was informed by Kelly (last name unknown) of Sedgwick, an outside corporation that handles human resource issues for Walmart, that Walmart rescinded the offer for me to be a customer host and that I would not receive the customer host position based on Walmart's corporate policy that requires customer hosts to independently stand.

15) On April 16, 2019, I met with Dennis O'Malley and Greg, and was offered a self-cashier position. I refused this offer because I cannot physically perform the essential functions of the self-cashier position due to dexterity limitations in my left hand.

16) As a result of Walmart's refusal to provide a reasonable accommodation, or to engage in the interactive process, I was constructively discharged and my employment was terminated on April 26, 2019.

17) At some point after my employment was terminated, I was offered $3,500 in a severance package. In order to receive the severance package, I was required to sign a form voluntarily releasing Walmart of any claims of discrimination; therefore, I refused.

2019 OCT 29  AM 11: 11  RECEIVED EEOC ST LOUIS DISTRICT

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 10/11/2019       *Jane E. [signature]*<br>*Date*          *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

Electronically Filed - St Charles Circuit Div - December 18, 2020 - 12:55 PM

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1.    **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2.    **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3.    **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4.    `ROUTINE USES.` This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5.    **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

Electronically Filed - St Charles Circuit Div - December 18, 2020 - 12:55 PM



RECEIVED
EEOC
ST LOUIS DISTRICT
2019 OCT 29 AM 11: 11

**2011-CC01194**

Electronically Filed - St Charles Circuit Div - December 18, 2020 - 12:55 PM

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Jane E. Hogan<br>119 MIRANDA CT<br>Wentzville, MO 63385 | From: | St. Louis District Office<br>1222 Spruce Street<br>Room 8.100<br>Saint Louis, MO 63103 |
|---|---|---|---|

|  | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 560-2019-02314 | Jeffrey S. Jones,<br>Investigator | (314) 798-1928 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

- [ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.
- [ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.
- [ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.
- [ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge
- [X] The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.
- [ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.
- [ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):**  EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

*James M. Gall*

Digitally signed by James M. Gall
DN: cn=James M. Gall, o=EEOC, ou=Intake,
email=james.gall@eeoc.gov, c=US
Date: 2020.09.28 12:42:19 -05'00'

September 28, 2020

Enclosures(s)

**Lloyd J. Vasquez, Jr.,**
**District Director**

*(Date Mailed)*

cc:

**Scott A. Forman, Shareholder**
**WAL MART STORES, INC.**
**c/o Littler Mendelson, P.C.**
**2301 Mcgee St., 8th Floor**
**Kansas City, MO 64108**

**Goeke, Emily**
**MISSOURI PROTECTION AND ADVOCACY**
**SERVICES**
**2000 Innerbelt Business Center Drive**
**Saint Louis, MO 63114**

PLAINTIFF'S
EXHIBIT

**B**

Enclosure with EEOC
Form 161 (11/16)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),
the Genetic Information Nondiscrimination Act (GINA), or the Age
Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within
90 days of the date you *receive* this Notice**.  Therefore, you should **keep a record of this date**.  Once this 90-
day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to
consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope, and tell
him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely
manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as
indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate
State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide
after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short
statement of the facts of your case which shows that you are entitled to relief.  Courts often require that a copy of
your charge must be attached to the complaint you file in court.  If so, you should remove your birth date from the
charge.  Some courts will not accept your complaint where the charge includes a date of birth.  Your suit may include
any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters
alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in
some cases can be brought where relevant employment records are kept, where the employment would have
been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from
the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint
or make legal strategy decisions for you.

## PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back
pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible.  For
example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit
before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA
suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.
Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA
claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

## ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction
in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be
made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your
efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above,
because such requests do not relieve you of the requirement to bring suit within 90 days.

## ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any
questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to
inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide
your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files
are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge
file, **please make your review request within 6 months of this Notice**.  (Before filing suit, any request should be
made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

Electronically Filed - St Charles Circuit Div - December 18, 2020 - 12:55 PM

Enclosures(s)

cc:   **Elizabeth Overton**
**Walmart Supercenter**
**2301 McGee Street, Suite 800**
**c/o Littler Mendelson, P.C. GSC (LCS)**
**Kansas City, MO 64108**

Electronically Filed - St Charles Circuit Div - December 18, 2020 - 12:55 PM

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):**   The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability.  *However, these terms are redefined, and it is easier to be covered under the new law.*

**<u>If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at <http://www.eeoc.gov/laws/types/disability_regulations.cfm>.</u>**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

  ➢ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
  ➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)),  **"major life activities"  now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system**.**
  ➢ **Only one** major life activity need be substantially limited.
  ➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
  ➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or "**in remission**" (e.g., cancer) is a disability if it **would be substantially limiting when active**.
  ➢ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**
  ➢ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
  ➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
  ➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
  ➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note:  Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment.  Beyond the initial pleading stage, some courts will require specific evidence to establish disability.*  For more information, consult the amended regulations and appendix, as well as explanatory publications, available at <http://www.eeoc.gov/laws/types/disability_regulations.cfm>.

**2011-CC01194**

Electronically Filed - St Charles Circuit Div - December 18, 2020 - 12:55 PM

IN THE CIRCUIT COURT OF ST. CHARLES COUNTY
STATE OF MISSOURI

JANE HOGAN,                                        )
                                                   )
        Plaintiff,                                 )
                                                   )
        v.                                         )        Case No.
                                                   )
WAL-MART STORES EAST, LP,                          )
d/b/a WALMART,                                     )
                                                   )
        Defendant.                                 )

<u>**REQUEST FOR SUMMONS PURSUANT TO**</u>
<u>**RULE 54.16 ACKNOWLEDGEMENT OF SERVICE BY MAIL**</u>

COMES NOW Plaintiff, by and through undersigned counsel, hereby requests the Circuit

Court Clerk issue a summons for service by mail in accordance with Rule 54.16 of the Missouri

Rules of Civil Procedure in this cause on the below named parties:

> **Wal-Mart Stores East, LP d/b/a Walmart**
> **Registered Agent**
> **120 South Central Avenue**
> **Clayton, MO 63105**

**Appointed as requested:**
**Judy Zerr, Circuit Clerk**


**By:** _____        **Date:** _____

                                                 Respectfully Submitted,

                                                 /s/ Cyrus Dashtaki_____
                                                 Cyrus Dashtaki, #57606
                                                 Dashtaki Law Firm, LLC
                                                 5205 Hampton Avenue
                                                 St. Louis, MO 63109
                                                 Telephone:  (314) 932-7671
                                                 Facsimile:  (314) 932-7672
                                                 Email:  cyrus@dashtaki.com

                                                 *Attorney for Plaintiff Jane Hogan*



## IN THE 11TH JUDICIAL CIRCUIT, ST. CHARLES COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>TED HOUSE | **Case Number:  2011-CC01194** |
| Plaintiff/Petitioner:<br>JANE HOGAN<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>CYRUS C DASHTAKI<br>5205 HAMPTON AVENUE<br>SAINT LOUIS, MO  63109 |
| Defendant/Respondent:<br> WAL-MART STORES EAST, LP D/B/A<br>WALMART | Court Address:<br>300 N 2nd STREET<br>SAINT CHARLES, MO  63301 |
| Nature of Suit:<br>CC Employmnt Discrmntn 213.111 | (Date File Stamp) |

## Summons in Civil Case

The State of Missouri to:  WAL-MART STORES EAST, LP D/B/A WALMART
                           Alias:

REGISTERED AGENT
120 SOUTH CENTRAL AVENUE
CLAYTON, MO  63105

*COURT SEAL OF*

*ST. CHARLES COUNTY*

**You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.**

_____12/18/2020_____          _____/S/  Cheryl Crowder_____
Date                                                 Clerk

Further Information:

## Sheriff's or Server's Return

**Note to serving officer**: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to:
_____ (name) _____ (title).

☐ other: _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____          _____
        Printed Name of Sheriff or Server                     Signature of Sheriff or Server
                **Must be sworn before a notary public if not served by an authorized officer:**

                                     Subscribed and sworn to before me on _____ (date).

*(Seal)*

                                     My commission expires: _____          _____
                                                                     Date                              Notary Public

| **Sheriff's Fees, if applicable** | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $_____10.00_____ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | $_____ |

A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

STATE OF MISSOURI                               )
                                                )  ss.
ST. CHARLES COUNTY, MISSOURI          )

### IN THE CIRCUIT COURT OF ST. CHARLES COUNTY, MISSOURI


**NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES**


Pursuant to Missouri Supreme Court Rule 17, the Circuit Court of St. Charles County, Missouri (Eleventh Judicial Circuit) has adopted a local rule to encourage voluntary alternative dispute resolution.  The purpose of the rule and the program it establishes is to foster timely, economical, fair and voluntary settlements of lawsuits without delaying or interfering with a party's right to resolve a lawsuit by trial.

This program applies to all civil actions other than cases in the small claims, probate and family court divisions of the Circuit Court, and you are hereby notified that it is available to you in this case.

The program encourages the voluntary early resolution of disputes through mediation. Mediation is an informal non-binding alternative dispute resolution process in which a trained mediator facilitates discussions and negotiations among the parties to help them resolve their dispute.  The mediator is impartial and has no authority to render a decision or impose a resolution on the parties.   During the course of the mediation, the mediator may meet with the parties together and separately to discuss the dispute, to explore the parties' interests, and to stimulate ideas for resolution of the dispute.

A list of mediators approved by the court and information regarding their qualifications is kept by the Circuit Clerk's Office.  If all parties to the suit agree to mediation, within ten days after they have filed the Consent to Mediation Form on the reverse side of this page with the Clerk of the Court, they shall jointly select from that list a mediator who is willing and available to serve.  If the parties cannot agree upon the mediator to be selected, the Court will make the selection.

The full text of the Circuit Court's local court rules, including Rule 38 Alternative Dispute Resolution, is available from the Clerk of the Circuit Court or at: http://www.courts.mo.gov/hosted/circuit11/Documents/LOCAL_COURT_RULES.pdf

A copy of this Notice is to be provided by the Clerk of the Circuit Court to each of the parties initiating the suit at the time it is filed, and a copy is to be served on each other party in the suit with the summons and petition served on that party.

STATE OF MISSOURI                           )
                                            )  ss.
ST. CHARLES COUNTY, MISSOURI                )

## IN THE CIRCUIT COURT OF ST. CHARLES COUNTY, MISSOURI

_____  )
                     Plaintiff(s),  )
                                    )
vs.                                 )            Cause #_____
                                    )
_____  )
                    Defendant(s).  )

## CONSENT TO MEDIATION FORM

       I, the undersigned counsel of record in this case, hereby certify that I have discussed the subject of mediation under the Court's Alternative Dispute Resolution Program with my client(s) in this case and that:

_____ We believe that mediation would be helpful in this case and consent to the referral of the case to mediation upon the filing of similar consents by all other parties in the case.

_____ We do not consent to the referral of this case to mediation.

_____
Signature

_____
(Print Name)

Attorney for:

_____
(Party or Parties)

Date: _____

## <u>NOTICE TO ATTORNEYS AND LITIGANTS</u>

## <u>COURT PROCEDURES FOR IN-PERSON HEARINGS</u>

1.  **YOU MUST BRING AND WEAR A MASK WHILE IN THE COURTHOUSE.**

2.  You MUST be here and check in at the beginning of the hour you are assigned.

3.  Only the Litigants and their Attorney are permitted in the Courthouse. No other family members are permitted in the Courthouse.

4.  Only 2 persons may use an elevator at a time. The stairwells will be open for separate entry and exit with instructions.

5.  A limited number of people are permitted in the courtroom at a time. If you are in the hallway waiting for your turn in court you MUST practice social distancing of 6 feet of separation. Follow the instructions of the bailiff at all times.

6.  You are only permitted to be on the same floor of the Courthouse as the Courtroom to which you are assigned.

7.  You MUST have all paperwork filed with the Court prior to the start of your court time.

8.  You MUST have all plea agreements worked out with the Prosecuting Attorney's office and all paperwork filed with the Court prior to your Court date. No plea bargaining in Court will be permitted.

Electronically Filed - St Charles Circuit Div - December 28, 2020 - 05:53 PM

IN THE CIRCUIT COURT OF ST. CHARLES COUNTY
STATE OF MISSOURI

JANE HOGAN,                          )
                                     )
        Plaintiff,                   )
                                     )
        v.                           )        Case No. 2011-CC01194
                                     )
WAL-MART STORES EAST, LP,            )        Division 1
d/b/a WALMART,                       )
                                     )
        Defendant.                   )

## MEMORANDUM TO THE COURT

Comes now Plaintiff, by and through her undersigned counsel, and files herewith Notice of

Mailing upon Defendant Wal-Mart Stores East, LP d/b/a Walmart, 120 S. Central Avenue, Clayton,

MO 63105, on December 22, 2020 by U.S.P.S. Certified Mail in accordance with Rule 54.16 of the

Missouri Rules of Civil Procedure. A copy of the signed U.S.P.S. Certified Mail return receipt

confirming the receipt of the same by Defendant's registered agent is attached hereto as Exhibit A.

Respectfully Submitted,

/s/ Cyrus Dashtaki
Cyrus Dashtaki, #57606
Dashtaki Law Firm, LLC
5205 Hampton Avenue
St. Louis, MO 63109
Telephone:  (314) 932-7671
Facsimile:  (314) 932-7672
Email:  cyrus@dashtaki.com

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby states that on this 28th day of December 2020, a true and correct copy
of the foregoing was filed electronically with Court's filing system and was served upon all counsel of
record.

/s/ Cyrus Dashtaki

Electronically Filed - St. Charles Circuit Div - December 28, 2020 - 05:53 PM

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _L Walter_ ☐ Agent ☐ Addressee<br>B. Received by *(Printed Name)* C. Date of Delivery<br>L. Walter 12-22-20 |
| 1. Article Addressed to:<br><br>Wal-Mart Stores East, LP, d/b/a Walmart<br>Registered Agent<br>120 South Central Avenue<br>Clayton, MO 63105 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No |
| ‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖<br>9590 9402 5520 9249 2410 16 | 3. Service Type<br>☐ Adult Signature<br>☐ Adult Signature Restricted Delivery<br>☐ Certified Mail®<br>☐ Certified Mail Restricted Delivery<br>☐ Collect on Delivery<br>☐ Collect on Delivery Restricted Delivery<br>☐ Insured Mail<br>☐ Insured Mail Restricted Delivery (over $500) | ☐ Priority Mail Express®<br>☐ Registered Mail™<br>☐ Registered Mail Restricted Delivery<br>☐ Return Receipt for Merchandise<br>☐ Signature Confirmation™<br>☐ Signature Confirmation Restricted Delivery |
| 2. Article Number *(Transfer from service label)*<br>7014 0510 0002 0416 8616 | |
| PS Form 3811, July 2015 PSN 7530-02-000-9053 | Domestic Return Receipt |

PLAINTIFF'S
EXHIBIT

A

Electronically Filed - St. Charles Circuit Div - December 28, 2020 - 05:53 PM



**USPS TRACKING #**

9590 9402 5520 9249 2410 16

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States**
**Postal Service**



• Sender: Please print your name, address, and ZIP+4® in this box•

Cyrus Dashtaki
Dashtaki Law Firm, LLC
5205 Hampton Avenue
St. Louis, MO 63109

Hogan