**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| JANE HOGAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:21-CV-78 RLW |
| ) | |
| WAL-MART STORES EAST, LP, ) | |
| d/b/a WALMART, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff Jane Hogan's Motion to Compel. (ECF No. 28). Plaintiff moves, pursuant to Fed. R. Civ. P. 37, for an Order compelling Defendant Wal-Mart Stores East, LP, ("Walmart") to provide full and complete discovery responses to her First Set of Interrogatories and First Request for Production of Documents. Walmart opposes the motion, which is fully briefed and ripe for review. For the reasons that follow, Plaintiff's Motion to Compel is granted in part and denied in part.

*I. Background*

Plaintiff originally brought suit against Walmart in state court asserting four counts in her Petition for Damages ("Complaint") of employment discrimination in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, et seq. ("ADA"). Plaintiff has multiple sclerosis ("MS") and is unable to ambulate without the use of a motorized wheelchair. According to the Complaint, Plaintiff was employed by Walmart as a People Greeter since 2004. Plaintiff alleges that in March 2019, a Walmart store manager informed Plaintiff that the People Greeter position was being eliminated and replaced with a new position entitled "Customer Host."

The Customer Host position lists standing for long periods of time as an essential function of that position. Plaintiff alleges she applied for the Customer Host position and requested an accommodation. According to Plaintiff, she believed it was not necessary to stand for long periods of time to perform the essential functions of the Customer Host position, and she requested that she be permitted to use her wheelchair as a reasonable accommodation to do the physical activity of standing. Plaintiff alleges she was informed by a third-party administrator "that her accommodation request was denied because Defendant's corporate policy required Customer Hosts to be able to independently stand on their feet for long periods of time." (ECF No. 6 at 4). Plaintiff claims, among other things, that she was offered the Customer Host position, but the offer was later rescinded because her request for an accommodation was denied. Plaintiff alleges she discussed two other positions with representatives of Walmart, Self-Checkout Host and Sales Associate, but that Walmart failed to provide her reasonable accommodations or engage in the interactive process as required by the ADA.

Walmart removed the case to this court on the basis of federal question jurisdiction. Following some pretrial discovery, Plaintiff sought leave to amend to her Complaint to clarify that she was bringing not only disparate treatment claims under the ADA, but disparate impact claims as well. Defendant opposed the motion. On January 4, 2022, the Court granted Plaintiff leave to amend.

In her Amended Complaint, Plaintiff brings four counts against Walmart. In Count I, Plaintiff alleges discrimination in hiring under the ADA. In this count, Plaintiff alleges disparate impact claims as well as disparate treatment claims. She challenges Walmart's hiring practices in general, and she alleges Walmart's hiring practices for the Customer Host position unlawfully discriminate against the disabled.

With regard to Walmart's general hiring policy, Plaintiff alleges that under Walmart's "Accommodation in Employment" policy "an employee whose physical disability impairs his ability to perform the Physical Activities listed in his job description is not eligible for an accommodation under Defendant's policy," because the applicant is determined to be unqualified. (ECF No. 42 at 8). According to the Amended Complaint, once Walmart's third-party vendor "determines an applicant with a disability is not 'eligible' for accommodation, Defendant will not consider that applicant for the position sought, regardless of his ability to perform the Essential Functions with reasonable accommodation." (ECF No. 42 at 8). Plaintiff alleges this policy disparately impacts the disabled and is in violation of the ADA. Plaintiff also alleges "Defendant's method of administering its Accommodation in Employment policy has the effect of refusing to make reasonable accommodations in avoidance of Defendant's duty to engage in an interactive process with an otherwise qualified individual with a disability." (Id. at 10).

In Count I, Plaintiff further alleges Walmart's "qualification standard unjustifiably screens out individuals with disabilities from the Customer Host position." (Id. at 11). According to the Amended Complaint, Walmart uses "standing for long periods of time" as a qualification for the Customer Host position. Plaintiff claims "standing for long periods of time" is not job-related or consistent with business necessity, and the essential functions of the Customer Host position could be accomplished with a reasonable accommodation.  (Id. at 12). Plaintiff alleges Defendant's qualification standard of standing has an unjustifiable discriminatory disparate impact on individuals with disabilities in that it unlawfully screens out persons with mobility disabilities in violation of 42 U.S.C. § 12112(b)(6).

In Count I, Plaintiff also alleges claims for disparate treatment. Plaintiff alleges Defendant "determined that Plaintiff was not 'qualified' for the Customer Host job because she could not

3

perform the Physical Activity 'stands for long periods of time.' As a result, Defendant would not consider whether she could perform the Essential Functions with reasonable accommodation, and instead denied her the employment opportunity." (Id. at 10).  Plaintiff claims Defendant's method of administrating its accommodation policy, with regard to Plaintiff, had the effect of discrimination prohibited by § 12112(b)(5)(B), which constitutes disparate treatment discrimination in violation of § 12112(a). (Id. at 14).

In Count II for Discrimination under the ADA, Plaintiff alleges Defendant discriminated against Plaintiff by avoiding its duty to engage with Plaintiff in an interactive process to identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations. Plaintiff also alleges Defendant discriminated against her on the basis of disability when it rescinded its Customer Host job offer, and when it terminated her employment.

In Count III, Plaintiff alleges Walmart failed to accommodate her disability in violation of the ADA.  More spcifically, she alleges that after Defendant unlawfully disqualified her from the Customer Host position and rescinded her job offer, it purported to offer her job search assistance as an alternate reasonable accommodation.   According to Plaintiff, Defendant did not effectively accommodate Plaintiff when it promised to assist her in searching for a job, because it failed to search for positions outside of Store 5313 or tell Plaintiff all of the open positions at Store 5313. She contends Defendant's job search assistance "accommodation" was merely "pretext."  (Id. at 18).   Instead, Walmart proposed reassignment as a Self-Checkout Host.  However, Defendant knew Plaintiff could not perform Self-Checkout Host without accommodation, and then refused to guarantee that an accommodation would be granted.   Plaintiff also alleges Defendant

4

disregarded Plaintiff's suggestions of other job positions she was capable of performing with or without accommodation.

Finally in Count IV, Plaintiff alleges she was retaliated against in violation of the ADA. Plaintiff alleges that soon after she requested workplace accommodations for the Customer Host position, Defendant retaliated against her by denying Plaintiff's requests for accommodations, rescinding her Customer Host job offer, denying her a timely, good faith interactive process, and terminating her employment.

On June 7, 2021, Plaintiff served Walmart with her First Set of Interrogatories and First Request for Production of Documents.  Walmart served its Objection and Answers to Plaintiff's first set of written discovery on July 12, 2021. Walmart asserted objections to all of Plaintiff's interrogatories and document requests, although it did provide some responses subject to those objections.  Walmart also asserts that after receiving Plaintiff's "golden rule letter," it provided Plaintiff with over 1,100 pages of documents.  Then, following a telephone conference with counsel, Walmart amended its interrogatory responses and supplemented its document production. Plaintiff contends there remain multiple deficiencies in Walmart's responses.  Plaintiff moves to compel Walmart to provide responses to Interrogatory Nos. 4, 10, and 11, and Document Request Nos. 16, 26, 30, and 32.[1]

## I. Discussion

Rule 26 of the Federal Rules of Civil Procedure governs the scope of discovery in federal which provides as follows:

---

[1] Plaintiff also asks that the Court compel Walmart to satisfy all the deficiencies listed in a letter addressed to Walmart from Plaintiff's counsel dated October 8, 2021, which she attached as an exhibit to her Motion.  The Court will only consider those issue raised in Plaintiff's motion and the corresponding briefing. The Court will not address issues raised in correspondence between the parties, which are not properly before the Court.

5

> (1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

"The scope of discovery under Rule 26(b) is extremely broad. Gowan v. Mid Century Ins. Co., 309 F.R.D. 503, 508 (D.S.D. 2015) (citing 8 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure §§ 2007, 3637 (1970)). "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." Hickman v. Taylor, 329 U.S. 495, 507 (1947). Relevancy in this context "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Jo Ann Howard & Assocs., P.C. v. Cassity, 303 F.R.D. 539, 542 (E.D. Mo. 2014) (citation and quotation omitted). After the proponent of discovery makes a threshold showing of relevance, the party opposing a motion to compel has the burden of showing its objections are valid by providing specific explanations or factual support as to how each discovery request is improper. Id. (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992), St. Paul Reinsurance Co. v. Com. Fin. Corp., 198 F.R.D. 508, 511–12 (N.D. Iowa 2000)). The party must demonstrate to the court "that the requested documents either do not come within the broad scope of relevance defined pursuant to Rule 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." Id. (quoting Burke v. New York City Police Dep't, 115 F.R.D. 220, 224 (S.D.N.Y. 1987)).

### A.     Interrogatory Nos. 4, 10, and 11, and Document Request No. 16

Plaintiff moves to compel Walmart to provide information and documents in response to Interrogatory Nos. 4, 10, and 11, and Document Request No. 16, wherein she seeks information about other people who made complaints of disability discrimination against Walmart. Plaintiff argues this information is relevant to her claims of disparate impact under the ADA. More specifically, Plaintiff asks the Court to compel Walmart to:

- identify persons who made complaints of disability discrimination and retaliation against Walmart, the substance of the complaint, Walmart's response to the complaint and to produce related documents;

- identify any such complaint filed with any federal, state, or local agency, and if so, the agency and charge number; and

- identify any complaint by a current or former employee that resulted in a lawsuit, and if so the court and case number.

For these interrogatories and discovery requests, Plaintiff limits the geographic scope to "Region 43," and the temporal scope to the period of time after "Walmart's "More at the Door" initiative, which she asserts was "kicked off" in 2015.

Walmart states that in response to these discovery requests, it searched for information regarding lawsuits, charges of discrimination, and internal ethics complaints concerning disability discrimination against Gregory Kerner (the Store Manager), Dennis O'Malley (the Market Human Resource Manager), or Store 5313, from July 2016 to date, and Walmart was unable to identify any relevant information. Defendant argues anything else would be irrelevant to this dispute because Plaintiff's allegations concern solely the Customer Host Role and the essential functions of that position.[2] Walmart also argues that Plaintiff has not pleaded allegations regarding

---

[2]Plaintiff's Motion to Compel was filed prior to her Amended Complaint. Plaintiff moved to amend her complaint to clarify that she was bringing both disparate impact and disparate treatment claims under the ADA. It is Plaintiff's position that she has asserted disparate impact

Walmart's method of administering its reasonable accommodation policies. Walmart further argues that even if she had, Plaintiff's discovery requests are "improperly broad." (ECF No. 30 at 7). Defendant asserts Plaintiff has "embarked on a fishing expedition," and she seeks "sensitive and personal information regarding individuals who are not parties to this lawsuit." (Id.) Walmart also states that it objects to these requests because they seek information protected from disclosure by the attorney-client privilege and/or work product doctrine, are overly broad, unduly burdensome, and not proportional to the needs of the case.

      Whether or not Plaintiff brought claims of disparate impact under the ADA in her initial Complaint is immaterial. It is clear from the Amended Complaint that Plaintiff is pursuing disparate impact claims under the ADA. Plaintiff alleges Walmart's method of administering its Accommodation in Employment policy in general has a disparate impact on job applicants, in that an applicant with a disability who cannot perform the physical activities listed in the job's description without reasonable accommodation is determined to be not "qualified" for the position and therefore is not "eligible" for accommodation under the policy, whether or not the applicant can perform that job with a reasonable accommodation. Plaintiff also alleges that Walmart's method of administering its Accommodation in Employment avoids Defendant's duty to engage in an interactive process with an otherwise qualified individual with a disability. In addition to challenging Walmart's more general hiring practices, Plaintiff alleges Walmart's qualification standard for the Customer Host position unjustifiably screens out individuals with disabilities.

      Under the ADA, "disparate-impact claims 'involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than

---

claims all along, while Defendant has argued that Plaintiff asserted only disparate treatment claims in her original Complaint.

another and cannot be justified by business necessity.'" Raytheon Co. v. Hernandez, 540 U.S. 44, 52–53 (2003) (quoting Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n.95 (1977)). "Under a disparate-impact theory of discrimination, 'a facially neutral employment practice may be deemed [illegally discriminatory] without evidence of the employer's subjective intent to discriminate that is required in a 'disparate-treatment' case.'" Id. (quoting Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 645–646 (1989)). Evidence regarding other disabled employees and how they have been impacted by the challenged employment practice is relevant to disparate impact claims. Lowery v. Hazelwood Sch. Dist., 244 F.3d 654, 660 (8th Cir. 2001) ("Because [the plaintiff] failed to put forth a single situation in which an employee in a similar position with the district had similar performance problems and was treated more favorably, [the plaintiff]'s disparate impact allegations are insufficient to create the necessary inference of discrimination.") The Court finds that the information Plaintiff seeks in Interrogatory Nos. 4, 10, and 11, and Document Request No. 16 is relevant to this dispute.

Defendant also argues that production of the requested discovery would be unduly burdensome and not proportionate to the needs of this litigation. Rule 26(b)(1) was amended in 2015 to include a "proportionality" requirement for the parties and the court to consider in resolving discovery disputes. Fed. R. Civ. P. 26. The amendment, however, does not "alter the basic tenet that Rule 26 is to be liberally construed to permit broad discovery." Prime Aid Pharmacy Corp. v. Express Scripts, Inc., No. 4:16-CV-1237 (CEJ), 2017 WL 67526, at *4 (E.D. Mo. Jan. 6, 2017) (quoted case and internal citation omitted). "[T]he existing allocation of burdens to show undue burden or lack of proportionality have not fundamentally changed." Vallejo v. Amgen, Inc., 903 F.3d 733, 743 (8th Cir. 2018) (quoted case omitted). "A party claiming requests

9

are unduly burdensome cannot make conclusory allegations, but must provide some evidence regarding the time or expense required." Id. (quoted case omitted).

The factors for determining whether requested information is proportional to the needs of the case include: the importance of the issues, the amount in controversy, the parties' relative access to the information and their resources, the importance of the discovery in resolving the issues, and whether the burden or expense of producing the discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). See also Duhigg v. Indus., No. 8:15CV91, 2016 WL 4991480, at *3 (D. Neb. Sept. 16, 2016) (in opposition to plaintiff's motion to compel, defendant provided information regarding the hours and expense of reviewing responsive documents).

In opposing Plaintiff's Motion to Compel, Walmart has provided virtually no evidence to support its claim that Plaintiff's discovery requests are unduly burdensome or disproportional to the needs of this case. Although Defendant has skirted the issue, the Court believes it goes without saying that Walmart would have superior, if not exclusive, access to the information Plaintiff seeks in these discovery requests, and as a large company with billions of dollars in revenues and profits it has the resources to access it.

As for the scope of the requests, Plaintiff is not asking Walmart to do a nation-wide search for Interrogatory Nos. 4, 10, and 11, and Document Request No. 16, but rather she limited her requests to Region 43 – a term, she contends, Walmart's counsel referred to when conferring on the discovery dispute, and which encompasses 114 Walmart stores, including the store where Plaintiff worked. For its part, Walmart does not propose an alternative geographic scope, other than the store where Plaintiff worked, which is too limiting.

As for the effort it would take to access the information, there is nothing in the record regarding the time and/or expense that would be incurred producing documents and information

10

from Region 43.  Walmart does point to the fact that as a part-time employee, Plaintiff only earned $10,000 a year, and to the extent she would be entitled to compensatory or punitive damages, her damages would be capped at $300,000.00.  Therefore, according to Walmart, "This case does not merit wide-ranging discovery over more than one hundred stores and thousands (if not tens of thousands of employees." (ECF No. 30 at 9).  Contrary to Walmart's implication, $300,000 is not an insignificant amount, and with no evidence as to how much, even approximately, such a search would cost or how long it would take, the Court cannot determine whether the requests are disproportionate.  It is Walmart's burden to show that the requests are unduly burdensome and/or disproportionate to the needs of this litigation, and Walmart fails to meet that burden.

With regard to Defendant's argument that the information and documents Plaintiff seeks contain sensitive and personal information regarding individuals who are not parties to this lawsuit, there is a Protective Order entered in this case.  The Protective Order was entered for the purpose of protecting sensitive and personal information. (ECF No. 22 at 2).  Walmart's objection on this ground is without merit.

Finally, as for Walmart's objection that the interrogatories and requests contain information protected from disclosure by the attorney-client privilege and/or work product doctrine, under the terms of the Case Management Order, "for each item of information or document withheld from production in response to a written discovery request, the withholding party must serve a privilege log on opposing counsel.  See Rule 26(b)(5)(A), Fed. R. Civ. P.  The privilege log must be served simultaneously with the response to the written discovery request in which the assertion of privilege or work product is made." (ECF No. 16 at 2).  Plaintiff states that Defendant asserted privilege with regarding to these requests but failed to provide a privilege log. The Court declines to find that Walmart has waived attorney-client privilege and/or work product

11

based on its failure to provide a privilege log.  However, going forward if Walmart continues to assert attorney-client privilege and/or privilege under the work product doctrine, it must produce a privilege log served simultaneously with its responses to written discovery requests.

In sum, the information and documents Plaintiff seeks in Interrogatory Nos. 4, 10, and 11, and Document Request No. 16 are relevant to Plaintiff's claims.  Walmart fails to meet its burden to show that the discovery requests are unduly burdensome or not proportionate to the needs of this litigation.  Concerns about personal and sensitive documents and information can be addressed under the terms the Protective Order.  And to the extent Walmart is claiming the documents contain attorney-client privilege and/or work product doctrine, it must produce a privilege log as ordered in the CMO.  Plaintiff's Motion to Compel is granted with regard to Interrogatory Nos. 4, 10, and 11, and Document Request No. 16.

**B.     Document Request No. 30**

In Document Request No. 30, Plaintiff seeks electronically stored information ("ESI") maintained in Walmart's systems.  In her Motion to Compel, Plaintiff proposes the following Boolean search:

> (people greeter* OR customer host*) AND (function* N5 (essential* OR ~necessary OR require*) OR (physical activit* N5 (essential* OR ~necessary OR require*) AND stand*

Plaintiff's initial search request was significantly more expansive, and according to Plaintiff she has narrowed her request twice in response to Walmart's objections.[3]

---

[3] In Plaintiff's First Set of Document Requests No. 30, Plaintiff originally requested the following search for ESI:

> Please produce communications maintained on Defendant's electronic systems containing the following terms (with applicable root expanders): "Hogan," "Jane*," "people greeter," "greeter," "customer host," "host," "MS," M.S.," "multiple sclerosis," "sclerosis," "nervous system," "nerve damage," "wheelchair," "chair,"

Plaintiff argues that the ESI she seeks in her proposed search would be relevant to rebut Walmart's affirmative defense that for the Customer Host position, standing is job-related and consistent with a business necessity. Plaintiff states that her proposed search is designed to identify electronic communications that refer to the People Greeter to Customer Host transition, and why Walmart characterizes the physical activity "standing" to be necessary, or how standing facilitates the performance of essential functions, such that the job cannot be performed with a reasonable accommodation. Having reviewed the proposed search and the relevant law and facts alleged, the Court agrees that Plaintiff's proposed search is designed to lead to the discovery of information that would be relevant to claims and defenses at issue in this case.

Walmart objects to the geographic and temporal scope of the request. Defendant notes that unlike her other requests, Plaintiff has not limited this search request to Region 43, and the search would amount to a company-wide search. Walmart also objects to the time limitation, arguing the More at the Door initiative was not implemented at Store 5313 until Spring 2019.

Despite Walmart's objection as to scope, the Court finds the request is sufficiently tailored. The proposed search is not so broad as Walmart would suggest. The Court finds it is reasonably

---

"powerchair," "motor," "scooter," "maneuver*," "bound," "mobility," "confined," "impair*," "essential function," "essential," "physical activ*," "mandatory," "disabil*," "limit*," "restrict*," "accommodat*," "modif*," "adapt*," "assist*," "aid," "accessib*" "inaccessib*," "job function," "job description," "bound," "cripple*," "afflict*," "lame," "gimp," "paraly*," "paraplegi*," "quadraplegi*," "deform*, "invalid," "infirm," "handicap*," "normal," "abnormal," "abled," "able-bodied," "barrier," "unable," "special needs," "defect*," "challenge*," "depend*," "independ*," "stricken," "defect*," "damage*," "deteriorat*," "suffer*," "doctor," "stand*," "walk*," "run*," "chase," "carry*," "dexterity," "ambulat*," "safe*," "capacity," "discriminat*," "ADA," "Title 1," "Title I," "Title one," "interactive process," "burden*," "FMLA," "insurance," "premium*," "not acceptable," "fired," "terminated"

(ECF No. 29, Ex. 3 at 14).

designed to capture documents related to the People Greeter to Customer Host transition, and why Walmart characterizes the physical activity "standing" to be necessary, or how standing facilitates the performance of essential functions. In her Amended Complaint, Plaintiff alleges Walmart's More at the Door initiative, which eliminated the People Greeter Position and replaced it with Customer Host, was not limited to Store 5313, but rather the initiative came from higher up in the company, and the shift disparately impacted persons with mobility disabilities. The Court declines to restrict the search to Store 5313 or to the time period after 2019.

Walmart also argues this search is unduly burdensome and disproportionate to the needs of the case. Defendant asserts without providing any evidentiary support that the search cannot be run across its entire corporate database and would not work for a "web-based search platform." (ECF No. 30 at 12). Walmart also argues the search is not adequately narrowed and would "[p]ull in any email transmission, document, PowerPoint, etc. that contains the description of the essential functions of the Customer Host position." (Id.)

First and foremost, Walmart has submitted no evidence, in affidavits or otherwise, regarding how it manages its ESI. The Court has been provided no information regarding the size of its electronic document system(s), where and how these are maintained, what the cost would be to conduct Plaintiff's proposed search on the systems, and/or how much time it would take. In the absence of this information, it is nearly impossible for the Court to decide as to the burden it would place on Walmart, and whether the cost would outweigh any benefit that could be expected to be derived from the search.

Under the Federal Rules of Civil Procedure, a responding party is presumed to bear the expense of responding to discovery requests. Prime Aid Pharmacy Corp., 2017 WL 67526, at *4. As other courts have held, "The fact that a corporation has an unwieldy record keeping system

which requires it to incur heavy expenditures of time and effort to produce requested documents is an insufficient reason to prevent disclosure of otherwise discoverable information. A discoveree cannot avoid a proper discovery request by utilizing record keeping which conceals rather than discloses." Id. (quotation omitted) (citing Webb v. Ethicon Endo-Surgery, Inc., No. CIV. 13-1947 JRT/JJK, 2015 WL 317215, at *7 (D. Minn. Jan. 26, 2015); McAllister–Lewis v. Goodyear Dunlop Tires N. Am., Ltd., No. 4:14-CV-04103-LLP, 2015 WL 4886539, at *14 (D.S.D. Aug. 17, 2015), supplemented, No. 4:14-CV-04103-LLP, 2015 WL 5794697 (D.S.D. Oct. 1, 2015)). Walmart's assertion that the search cannot be run across its entire corporate database or that it does not work for a "web-based search platform," without further evidence or explanation, is not adequate to establish that Plaintiff's proposed search would impose an undue burden. Id.  Plaintiff's Motion to Compel with regard to Document Request No. 30 is granted.

      C.      **Document Request No. 26**

In Document Request No. 26, Plaintiff seeks: "Communications (emails, text messages, etc.) to or from Walmart, Greg Kerner, or Dennis O'Malley that concern Plaintiff."  Walmart objected, among other reasons, on the ground that the request was overly broad.  Plaintiff states that in response to Walmart's objection, she agreed to narrow the request to communications within Walmart's custody and control.  According to Plaintiff, Walmart then subsequently argued that the documents she seeks in Document Request No. 26 would be encompassed in Document Request No. 30.  Plaintiff states that in Document Request No. 26 she is requesting all communications, however, not just digital ones.

In its response to Plaintiff's Motion, Walmart states that it has already produced extensive discovery in response to Document Request No. 26.  Walmart argues that the identification of Walmart as the custodian is "unclear, unduly burdensome, and not proportional to the needs of the

15

case." (ECF No. 30 at 10). But once again, Walmart fails to provide the Court with any evidence or support for its argument that the request is burdensome or disproportionate to the needs of this case. Walmart bears the burden of showing its objections are valid by providing specific explanations or factual support as to how the document request is improper, which it has failed to do.

In her Reply, Plaintiff states that Defendant failed to produce any documents in response to Request No. 26, and she is aware of at least one responsive document – an email between Kerner and O'Malley concerning Plaintiff's disability, request for accommodation, and the Customer Host Role – that was not produced.

The Court finds Plaintiff's request for communications Walmart has in its custody that concern her is not overly broad. Plaintiff's motion to compel with regard to Document Request No. 26 is granted. Walmart shall produce communications (emails, text messages, etc.) to or from Walmart, Greg Kerner, or Dennis O'Malley that concern Plaintiff.

**D.     Document Request No. 32**

In Document Request No. 32, Plaintiff requests Walmart to produce any policy of insurance through which Walmart might be insured in any manner for the damages, claims, or actions alleged in Plaintiff's Complaint. Walmart objected to this request on the basis of relevance and only produced the policy declaration page. In its response to Plaintiff's Motion, Walmart states that "Walmart is self-insured in an amount in excess of the claims in this litigation. The EPLI insurance is for amounts over $25,000,000." (ECF No. 30 at 12). Walmart argues that the amount of damages in the case will not exceed $25,000,000 and, therefore, the insurance policy is irrelevant to this. Plaintiff did not respond to Walmart's argument in her Reply. Plaintiff's motion

to compel is denied as to Document Request No. 32, because the insurance policy is not relevant to Plaintiff's claim or Walmart's defenses.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Jane Hogan's Motion to Compel is **GRANTED in part and DENIED in part**. (ECF No. 28). The motion is **DENIED** with regard to Document Request No. 32. In all other respects, the motion is **GRANTED**. Consistent with the terms of this Memorandum and Order, Defendant Wal-Mart Stores East, LP, shall respond to Interrogatory Nos. 4, 10, and 11, and Document Request Nos. 16, 26 and 30 on or before **March 15, 2022.**

_/s/ Ronnie L. White_
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this  1st  day of March 2022.